**ORAL ARGUMENT IS SCHEDULED SEPTEMBER 18, 2023.**

No. 23-3023

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RUSSELL DEAN ALFORD,
*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:21-cr-00263-TSC-1

---

# REPLY BRIEF OF APPELLANT RUSSELL DEAN ALFORD

KEVIN L. BUTLER
Federal Public Defender
Northern District of Alabama

DEANNA LEE OSWALD
Assistant Federal Defender

TOBIE J. SMITH
Appellate Attorney
505 20th Street North
Suite 1425
Birmingham, Alabama 35203
205-208-7170

# TABLE OF CONTENTS

Table of Contents ..................................................................................i

Table of Authorities..............................................................................ii

Summary of the Argument ................................................................... 1

Argument............................................................................................... 3

    I.    Sections 1752(a)(2) and 5104(e)(2)(D) require conduct that is disorderly or disruptive in nature, not just in effect, and the evidence was insufficient to show Mr. Alford engaged in the proscribed conduct.......................................................... 3

        A.    Section 1752(a)(2) defines culpable conduct in its conduct element and culpable effects in its harm element ......... 5

        B.    Section 5104(e)(2)(D)'s prohibition against "engag[ing] in disorderly or disruptive conduct" means the same as section 1752(a)(2)'s identical prohibition............................... 8

    II.    Mr. Alford's sentence unreasonably applied the 18 U.S.C. § 3553(a) factors for the reasons stated in his initial brief, and other January 6 cases starkly show an unwarranted sentencing disparity ............................................................ 12

Certificate of Compliance................................................................... 15

Certificate of Service ......................................................................... 16

## TABLE OF AUTHORITIES

**Federal Cases**　　　　　　　　　　　　　　　　　　　　　　　　　　**Page(s)**

*Comm'r of Internal Revenue v. Acker*, 361 U.S. 87, 91 (1959) .......... 10–11

*Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 826 F. Supp. 2d 705 (S.D.N.Y. 2011) ................................................................ 7

*Garner v. Louisiana*, 368 U.S. 157 (1961) ............................................... 5

*Nielsen v. Preap*, 139 S. Ct. 954 (2019) ................................................... 7

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) .............................................. 10

\*　*Pub. Citizen, Inc. v. U.S. Dep't of Health and Hum. Servs.*, 332 F.3d 654 (D.C. Cir. 2003) ................................................................ 6

\*　*Ross v. Blake*, 578 U.S. 632 (2016) ........................................................ 6

*United States v. Booker*, 543 U.S. 220 (2005) ........................................ 13

\*　*Williams v. Taylor*, 529 U.S. 362 (2000) ................................................. 6

**United States Code**　　　　　　　　　　　　　　　　　　　　　　　　**Page(s)**

18 U.S.C. § 19 ............................................................................................ 9

18 U.S.C. § 1752(a)(1) ............................................................................. 10

\*　18 U.S.C. § 1752(a)(2) ...................................................................... 1–9, 11

18 U.S.C. § 1752(b)(2) ............................................................................... 9

\*　18 U.S.C. § 3553(a) ....................................................................... 2–3, 12–14

18 U.S.C. § 3559(a)(6) ............................................................................... 9

\*   40 U.S.C. § 5104(e)(2)(D) ......................................................... 1–3, 8–9, 11

40 U.S.C. § 5104(e)(2)(G) .......................................................................... 10

40 U.S.C. § 5109(b) ...................................................................................... 9

**Federal Rules of Appellate Procedure**                                **Page(s)**

Fed. R. App. P. 32 ...................................................................................... 15

## SUMMARY OF THE ARGUMENT

Mr. Alford has appealed (1) his disorderly-or-disruptive-conduct convictions under 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D) and (2) his 12-month total prison term for those counts and two others relating to his conduct at the Capitol Building on January 6, 2021. The first argument challenges the sufficiency of evidence that he engaged in *disorderly or disruptive* conduct by walking a short distance into the Capitol and standing silently against the wall for about ten minutes until police arrived and cleared the hallway. And the second argument contests the substantive reasonableness of a sentencing decision that gave too much weight to an unduly harsh Sentencing Guidelines range and the fact Mr. Alford went to trial, and too little weight to the need to avoid unwarranted sentencing disparities.

The government defends the convictions and the sentence. It argues that in both § 1752(a)(2) and § 5104(e)(2)(D), "disorderly or disruptive conduct" means simply "conduct," and any conduct may suffice if it has a disruptive effect. And the government argues that the sentence should be affirmed for the reasons offered by the district court: even a vast disparity between Mr. Alford's sentence and those for others convicted of

1

similar conduct is warranted, the government asserts, by the fact he went to trial and so is not situated similarly to them.

The government's preferred interpretation of §§ 1752(a)(2) and 5104(e)(2)(D) is unprecedented, and it drains the substance from those provisions' conduct elements, treating their specification of *disorderly or disruptive* conduct as meaningless surplusage. Those adjectives refer to the proscribed conduct's nature, not its effect—a conclusion that's especially clear from § 1752(a)(2), because that provision addresses conduct's effect elsewhere, in a separate harm element. The government argues at length that "disorderly conduct" has a well-established legal meaning (despite being "[a] term of loose and indefinite meaning" around the time of the statutes' enactment, Gov't Br. 28 (quoting *Black's Law Dictionary* 556 (rev. 4th ed. 1968)). But it offers no precedent holding that a defendant's mere presence may constitute disorderly or disruptive conduct under §§ 1752(a)(2) or 5104(e)(2)(D), and neither provision's text supports that reading here.

As for the sentence, the government's argument misreads 18 U.S.C. § 3553(a) in dismissing disparity concerns based on Mr. Alford's exercise of his right to a trial. The sentencing considerations enumerated in

2

§ 3553(a) include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6). The arguments in Mr. Alford's initial brief are faithful to that text; the government's counterarguments, for reasons discussed in Part II below, are not.

## ARGUMENT

**I. Sections 1752(a)(2) and 5104(e)(2)(D) require conduct that is disorderly or disruptive in nature, not just in effect, and the evidence was insufficient to show Mr. Alford engaged in the proscribed conduct.**

A violation of § 1752(a)(2) requires a culpable mental state,[1] culpable conduct,[2] and harmful effect.[3] And a violation of § 5104(e)(2)(D) requires a culpable mental state[4] and culpable conduct[5] that, as relevant here, is defined in language identical to § 1752(a)(2)'s.[6]

---

[1] "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions"

[2] "engag[ing] in disorderly or disruptive conduct"

[3] "such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions"

[4] "willfully and knowingly" and "with the intent to impede, disrupt, or disturb the orderly conduct of" certain congressional business

[5] "engag[ing] in disorderly or disruptive conduct"

[6] The conduct element in § 5104(e)(2)(D) may instead be satisfied by "utter[ing] loud, threatening, or abusive language," but there was no evidence Mr. Alford did anything

3

The government argues that "disorderly or disruptive conduct" means "*any* conduct" that "tend[s] to disturb or interrupt." Gov't Br. 16 (emphasis added). And under that interpretation, the argument goes, Mr. Alford's mere presence in the Capitol on January 6 was conduct, so it could suffice to violate the statute. *Id.* at 17.

But the government's interpretation flouts basic rules of statutory interpretation by treating adjectives in the conduct element as surplusage, ascribing the words "disorderly or disruptive conduct" a broad meaning that their statutory context belies, and generally stretching criminal prohibitions beyond the limits where they provide clear warning. As a fallback, the government argues that even if mere presence is not sufficient, Mr. Alford engaged in conduct that was truly disorderly or disruptive—trying the handle of a locked door, walking through a metal detector, walking a few steps in the wrong direction before heading to an exit, and waiting for an opening at the congested exit instead of squeezing between other people. *Id.* at 49. But none of that violates the statutes, either.

---

of the sort, as the government conceded below, *see* Initial Br. 24 n.3, and does not dispute on appeal, *see generally* Gov't Br. 42–49.

## A. Section 1752(a)(2) defines culpable conduct in its conduct element and culpable effects in its harm element.

The government's principal argument that Mr. Alford "engage[d] in disorderly or disruptive conduct," § 1752(a)(2), is that *any* conduct may violate the statute, because (it contends) the adjectives "disorderly" and "disruptive" don't refer to the conduct's nature, but to its effect. That might be a plausible reading if the statute did not have a separate element addressing conduct's effect; the government's brief gives an example of such a statute with its discussion of *Garner v. Louisiana*, 368 U.S. 157 (1961), *cited in* Gov't Br. 33, which reviewed Louisiana convictions for "[c]ommi[tting] . . . any . . . act in such a manner as to unreasonably disturb or alarm the public," 368 U.S. at 165. Since the Louisiana law expressly covered "any" act and described "disturb[ance]" as an effect, it plainly did not require that conduct be disturbing by its nature.

But that's not how § 1752(a)(2) is written. While it does require that disruption result ("imped[ing] or disrupt[ing] the orderly conduct of Government business or official functions"), that is separate from the requirement of disorderly or disruptive *conduct*. The harm element even refers back to the antecedent requirement of *disorderly or disruptive* conduct,

5

requiring that "**such** conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions," § 1752(a)(2).

The government's argument would collapse the conduct element into that distinct harm element, breaching the fundamental judicial duty to "give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (opinion of O'Connor, J., for the Court) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)). The government offers several arguments—variously based on legislative history, decisions involving different statutes, and hypotheticals, *see* Gov't Br. 23–47—that mere presence is sufficient. But all fail at this fundamental, textual step. *See Ross v. Blake*, 578 U.S. 632, 638 (2016) ("Statutory interpretation, as we always say, begins with the text"); *Pub. Citizen, Inc. v. U.S. Dep't of Health and Hum. Servs.*, 332 F.3d 654, 662 (D.C. Cir. 2003) ("We turn first, as we must, to the language of the statute, the most important manifestation of Congressional intent." (internal quotation marks omitted) (quoting *California ex rel. Brown v. Watt*, 668 F.2d 1290, 1304 (D.C. Cir. 1981))).

The government's arguments about the disorder that protesters collectively caused by their presence in the Capitol on January 6, Gov't

6

Br. 42–44, show why each individual could be found to have impeded or disrupted official proceedings, satisfying § 1752(a)(2)'s harm element. *Cf. Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 826 F. Supp. 2d 705, 710 (S.D.N.Y. 2011) ("[C]ourts need not resolve the sorites paradox and determine precisely how many grains of sand constitute a heap."). But those arguments do not show that the conduct element carries no meaning of its own.

A similar lesson comes from the government's hypothetical examples of boisterous behavior that causes no disruption. *See* Gov't Br. 34–35. As the government itself notes, those acts wouldn't violate § 1752(a)(2) because they fail to satisfy its intent element, its harm element, or both. *Id.* And those examples also might show that "the *intent* and conduct requirements each do independent work," as the government asserts. *Id.* at 35 (emphasis added). But they don't show how, under the government's reading of § 1752(a)(2), the conduct element would do any work independent of the *harm* element. That reading would make the requirement of *disorderly or disruptive* conduct "entirely redundant," *see Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (quoting *Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality opinion of Scalia, J.)), stripping

7

that language of meaning wherever *any* conduct "in fact, impedes or disrupts the orderly conduct of Government business or official functions," § 1752(a)(2). The provision's text does not support the government's interpretation.

**B.    Section 5104(e)(2)(D)'s prohibition against "engag[ing] in disorderly or disruptive conduct" means the same as section 1752(a)(2)'s identical prohibition.**

Section 5104(e)(2)(D) arguably presents a closer question, because it, unlike § 1752(a)(2), does not include a harm element.[7] But there is no obvious reason that the provisions' identical prohibitions against "engag[ing] in disorderly or disruptive conduct" would carry two different meanings, and the government offers no reason they should. As it notes, the two not only employ the same phrase, they also were enacted by Congress within a few years of each other for related (or parallel) purposes. *See* Gov't Br. 20–24. The omission of a harm requirement from § 5104(e)(2)(D) might best be explained by the fact that it defines a petty

---

[7] The full text of § 5104(e)(2)(D) prohibits

> willfully and knowingly . . . utter[ing] loud, threatening, or abusive language, or engag[ing] in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress . . . .

8

offense, *see* 18 U.S.C. § 19; 40 U.S.C. § 5109(b), whereas § 1752(a)(2) defines a Class A misdemeanor, *see* § 1752(b)(2); 18 U.S.C. § 3559(a)(6).

More to the point, the lack of a harm element in § 5104(e)(2)(D) does not hint that mere presence in the Capitol Building could constitute disorderly or disruptive conduct. Importantly, Mr. Alford does not dispute that, under both § 5104(e)(2)(D) and § 1752(a)(2), presence itself might constitute disorderly or disruptive conduct in certain circumstances—such as where a person remains present after, and in defiance of, an official command to disperse or leave. American disorderly-conduct laws often cover that very scenario, though they do it explicitly, not by implication. *See* Initial Br. 30 nn.13–14. And there is force to the argument that presence with an ingredient of direct defiance *is* disorderly or disruptive conduct. Mr. Alford's position therefore would not preclude a holding that a sit-in, for example, could violate § 5104(e)(2)(D), § 1752(a)(2), or both. *Cf.* Gov't Br. 20–21 (citing *Feeley v. District of Columbia*, 387 F.2d 216, 217 (D.C. Cir. 1967)).

While disorderly-conduct laws ordinarily don't cover mere presence, even unlawful presence, without an order to disperse, another common class of regulations does: trespass laws. Section 1752 itself contains a

9

criminal trespass provision, in subsection (a)(1). Mr. Alford was prosecuted and convicted under § 1752(a)(1) (App. 23, 37), and he does not dispute the sufficiency of the evidence supporting that verdict, *see* Initial Br. 22. Nor does he deny that evidence he joined others demonstrating in the Capitol was sufficient to support his conviction for "parad[ing], demonstrat[ing], or picket[ing] in any of the Capitol Buildings," § 5104(e)(2)(G). *See* Initial Br. 22. The government's argument for an indeterminate, totality-of-the-circumstances interpretation of "disorderly or disruptive conduct" therefore is not necessary to ensure there is a criminal statute, or even two, to cover acts like going inside the Capitol on January 6.

Nor is that interpretation consistent with longstanding principles for construing criminal statutes. Diluting those statutes' elements helps to ensure they can continue to "grow[] so exuberantly and . . . cover so much previously innocent conduct that almost anyone can be arrested for something." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part). But whether that seems desirable or not, "[t]he law is settled that 'penal statutes are to be construed strictly,' and that one 'is not to be subjected to a penalty unless the words of the statute plainly impose it.'" *Comm'r of Internal Revenue*

10

*v. Acker*, 361 U.S. 87, 91 (1959) (citations omitted) (quoting *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954); *Keppel v. Tiffin Sav. Bank*, 197 U.S. 356, 362 (1905)).

The words "disorderly or disruptive conduct" do not plainly cover mere presence, in the Capitol Building or anywhere else. The district court erred in denying Mr. Alford's motion for judgment of acquittal based on the court's holding that his mere presence satisfied the conduct elements of § 1752(a)(2) and § 5104(e)(2)(D). And although the government now argues in passing that other acts could have—under the government's proposed interpretation of those statutes—supported Mr. Alford's convictions, *see* Gov't Br. 49, that argument also fails. The district court did not rely on any of those acts in denying judgment of acquittal, and none of them were disorderly or disruptive in nature. Even if they had been, no rational jury could have found beyond a reasonable doubt that they were done "with intent to impede or disrupt the orderly conduct of Government business or official functions," § 1752(a)(2), or "to impede, disrupt, or disturb the orderly conduct of a session of Congress," § 5104(e)(2)(D), nor that any of them, "in fact, impede[d] or disrupt[ed] the orderly conduct of Government business or official functions," § 1752(a)(2).

The district court's denial of the motion for judgment of acquittal on Counts Two and Three should be reversed.

**II. Mr. Alford's sentence unreasonably applied the 18 U.S.C. § 3553(a) factors for the reasons stated in his initial brief, and other January 6 cases starkly show an unwarranted sentencing disparity.**

The government also disputes that Mr. Alford's sentence is substantively unreasonable, citing the district court's explanation and arguing that the court reasonably weighed the sentencing considerations enumerated in 18 U.S.C. § 3553(a). Mr. Alford's initial brief addresses the district court's points and explains how its sentencing decision "gave [ill-fitting sentencing guidelines]—and, apparently, the fact that Mr. Alford went to trial—more weight than those considerations reasonably deserved" while giving "too little weight to . . . the need to avoid unwarranted sentencing disparities." Initial Br. 52. Because the government's position largely relies on that court's reasoning, there is little new for Mr. Alford to say here.

One thing that must be said, though, is that while the government disapproves of "Alford's narrow focus on disparity in January 6 cases," Gov't Br. 56, it is the focus prescribed by § 3553(a)(6). Sentencing courts

12

are instructed to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and many January 6 defendants have been convicted of conduct very similar to Mr. Alford's. Yet the district court sentenced him to a far longer prison term than anyone else found guilty of similar conduct. Those details are discussed at length in his initial brief at pages 38–47, so he does not repeat them here.

That is just the type of disparity § 3553(a)(6) tells courts to avoid. That subsection refers to "similar *conduct*" (emphasis added) because it means for sentencing courts "to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction," not just the statute or statutes of conviction. *United States v. Booker*, 543 U.S. 220, 250 (2005) (opinion of Breyer, J., for the Court) (emphasis in original). So while the government is right that by going to trial, Mr. Alford "fore[went] the plea offers that almost all other misdemeanor January 6 defendants had accepted," Gov't Br. 53–54, § 3553(a)(6) tells courts to look past the dismissal of charges in a plea agreement to guard against disparate treatment.

13

The disparity in Mr. Alford's sentence is not warranted by his real conduct, or his decision to go to trial, or the Sentencing Guidelines, as his initial brief explains at pages 47–53. The sentence should be vacated along with his convictions on Counts Two and Three, for the reasons discussed above in Part I. In the alternative, if the Court affirms his convictions, it should vacate the sentence as unreasonable under § 3553(a). In either event, the case should be remanded for resentencing.

>Respectfully submitted,
>
>KEVIN L. BUTLER
>Federal Public Defender
>Northern District of Alabama
>
>/s/ DEANNA LEE OSWALD
>Assistant Federal Public Defender
>Deanna_Oswald@fd.org
>
>/s/ TOBIE J. SMITH
>Appellate Attorney
>
>Office of the Federal Public Defender
>Northern District of Alabama
>505 20th Street North, Suite 1425
>Birmingham, Alabama 35203
>205-208-7170
>Tobie_Smith@fd.org

## CERTIFICATE OF COMPLIANCE

Counsel for Russell Dean Alford certifies under Fed. R. App. P. 32(g) that this brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the brief contains 2,777 countable words. Century Schoolbook 14 is the style and type size used in this brief.

/s/ TOBIE J. SMITH
Appellate Attorney
Office of the Federal Public Defender
Northern District of Alabama

# CERTIFICATE OF SERVICE

I certify that on Friday, July 21, 2023, the foregoing brief was filed electronically using this Court's CM/ECF system, which will provide notice of filing to all counsel of record. A true and correct copy was also served by either first-class United States mail or Federal Express overnight delivery, postage prepaid, to A copy was also served by first-class United States mail, postage prepaid, on the following:

Mr. Russell Dean Alford
Reg. No. 37101-509
FCI Yazoo City Medium
Federal Correctional Institution
P.O. Box 5000
Yazoo City, MS 39194

On this same date, the original and additional copies of the foregoing brief were filed by Federal Express overnight delivery, postage prepaid, addressed as follows:

Clerk's Office—Appeal No. 23-3023
U.S. Court of Appeals for the D.C. Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Ave., NW
Washington, DC 20001

/s/ TOBIE J. SMITH
Appellate Attorney
Office of the Federal Public Defender
Northern District of Alabama